UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ERNESTO S. PURUGANAN and ISABELITA G. PURUGANAN,<br><br>Plaintiffs,<br><br>vs.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION as Trustee for ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE7, ASSET BACKED PASS-THROUGH CERTIFICATES; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and DOES 1 through 100,<br><br>Defendants. | Case No: C 12-05168 SBA<br><br>**ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Docket 14 |

The parties are presently before the Court on Plaintiffs Ernesto S. Puruganan and Isabelita G. Puruganan's renewed Motion for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("Renewed Motion for TRO"). Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.     BACKGROUND**

Plaintiffs are the owners of real property located at 1832 Sunnyvale Avenue, Walnut Creek, California ("the Property"), where they operate an elder care business. See Compl. ¶ 11, Dkt. 1; Puruganan Decl. ¶ 4, Dkt. 14-3. On August 10, 2005, Plaintiffs executed a promissory note in the amount of $736,000, secured by a Deed of Trust recorded against the Property. Compl. ¶ 11, Dkt. 1. The Deed of Trust identifies WMC Mortgage

("WMC") as the lender, Westwood Associates ("Westwood") as the trustee, and Mortgage Electronic Registration System ("MERS") as the Lender's nominee and beneficiary.  Id. Ex. A.  The Deed of Trust contains a power of sale authorizing the sale of the Property to satisfy the borrower's obligations under the mortgage.  Id. at 2.  At the time the loan closed or shortly thereafter, Plaintiffs' loan allegedly was sold to the ACE Securities Corp. Home Equity Loan Trust, Series 2005-HE7 ("MBS Trust").  Id. ¶ 12.

At some point, Plaintiffs fell behind on their mortgage payments, resulting in the recording of a Notice of Default and Election to Sell Under Deed of Trust ("NOD") against the Property by Northwest Trustee Services, Inc. ("Northwest") on May 17, 2011.  Id. Ex. B.  Northwest recorded the NOD as the agent for the beneficiary under the Deed of Trust.  Id.  At the time the NOD was recorded, Plaintiffs were $43,634.20 in arrears.  Id.

On August 24, 2011, all rights under the Deed of Trust were transferred to HSBC Bank USA ("HSBC"), as trustee for the MBS Trust.  Compl. Ex. C.  On the same date, a Substitution of Trustee was recorded which substituted Northwest as the trustee in place of Westwood.  Id. Ex. D.

On October 24, 2011, Northwest recorded a Notice of Trustee's Sale against the Property indicating that the Property was to be sold at a non-judicial foreclosure sale on November 18, 2011.  Compl. Ex. E.  On a date not specified in the record, the foreclosure sale was delayed to October 11, 2012, and again to November 13, 2012.  Puruganan Decl. ¶ 4.  The trustee's sale has since been cancelled.  Epsha Letter, Dkt. 19.[1]

**A.    PROCEDURAL HISTORY**

On October 4, 2012, attorney Christopher P. Epsha of Business Affairs Consultants Inc. ALC, filed a Verified Complaint in this Court on behalf of Plaintiffs.  As Defendants, the Complaint names HSBC and MERS, and alleges causes of action styled as: (1) Wrongful Foreclosure; (2) Quiet Title; (3) Fraud; (4) Cancellation of Instruments;

---

[1] The Court takes judicial notice of Northwest's website, which indicates that the trustee's sale of the Property has been "cancelled."  See http://www.usa-foreclosure.com/propertySearchResults.aspx?new=&ci=&c=&s=&sN=&sZ=&tNum=7777.16230&pAddr=&rdr=1&fci=Walnut%20Creek (last visited Nov. 9, 2012).

(5) Violation of Business and Professions Code § 17200; (6) Unjust Enrichment; (7) Slander of Title; and (8) Violation of California Civil Code § 2932.5. The Court's subject matter jurisdiction is predicated upon diversity jurisdiction, 28 U.S.C. § 1332. Compl. ¶ 10.

Along with the Complaint, Plaintiffs filed an ex parte Motion for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("First Motion for TRO"). Dkt. 2. In that motion, Plaintiffs sought to enjoin the foreclosure sale then scheduled for October 11, 2012. The Court denied the motion, finding, inter alia, that Plaintiffs failed to demonstrate good cause for failing to provide Defendants with notice of the action or the TRO request. Dkt. 12. The Court's Order indicated that Plaintiffs could renew their motion after they had served the Complaint and motion on Defendants. Id. at 4. In addition, the Court specified that Plaintiffs must first meet and confer with Defendants "in an effort to reach a mutually agreeable postponement of the trustee's sale to facilitate Defendants' ability to submit a brief in response to Plaintiffs' motion." Id.[2]

On November 6, 2012, almost a month after the Court denied Plaintiff's First Motion for TRO, Plaintiffs attempted, for the first time, to serve Defendants with the Complaint. See Decl. of Janice Quimby Re Service of Verified Complaint and Renewed Motion for Temporary Restraining Order ("Quimby Decl. Re Serv.") ¶¶ 2-3, Dkt. 15. On the same date, Plaintiffs filed the instant Renewed Motion for TRO, which again seeks to enjoin the now-cancelled trustee's sale. In an apparent attempt to comply with the Court's prior order to meet and confer with Defendants, non-attorney Janice Quimby, who works for Mr. Epsha in an unspecified capacity, claims that she unsuccessfully attempted to persuade Defendants to delay the trustee's sale. See Decl. of Janice Quimby Re

---

[2] On the same date that it denied Plaintiff's First Motion for TRO, the Court issued an order referring this action to the Court's Alternative Dispute Resolution ("ADR") Unit, pursuant to Civil Local Rule 16-8 and ADR Local Rule 2-3, to assess whether the action was suitable for mediation or a settlement conference. Dkt. 10. The initial conference under the referral is to take place within forty-five days of October 10, 2012. Because Plaintiffs' counsel did not make any attempt to serve the Complaint until November 6, 2012, the initial ADR conference has not yet transpired.

Compliance with the Meet and Confer Requirements of the Court's October 10, 2012 Order Denying Plaintiff's Application for a Temporary Restraining Order ("Quimby Decl. Re Compliance") ¶¶ 2-11, Dkt. 14-1. Defendants have not responded to the Renewed Motion for TRO, and it is unclear whether that they have accepted service of process.

## II.   LEGAL STANDARD

The same standard applies to a motion for a TRO and a motion for a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011). "A TRO is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Niu v. United States, 821 F. Supp. 2d 1164, 1168 (C.D. Cal. 2011) (citing Winter, 555 U.S. at 22).

## III.   DISCUSSION

### A.   LIKELIHOOD OF SUCCESS

The gist of Plaintiffs' claims is that Defendants have no legal right to foreclose on the Property. California Civil Code sections 2924 through 2941 govern non-judicial foreclosures initiated under a deed of trust. Gardner v. Am. Home Mortg. Serv., Inc., 691 F. Supp. 2d 1192, 1102 (E.D. Cal. 2010). Under this statutory scheme, a non-judicial foreclosure (also known as a trustee's sale) may be initiated by a "trustee, mortgagee, or beneficiary, or any of their authorized agents . . . ." Cal. Civ. Code § 2924(a). The foreclosure process is commenced by the recording of a NOD. Id. § 2924(a)(1). Id.

- 4 -

(emphasis added). If the default is not cured within three months of the NOD, a notice of sale may be given which states the time and place of the sale. Id. § 2924(a)(3). A "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." Id. § 2924b(b)(4). Where, as here, the deed of trust contains an express provision granting a power of sale, the beneficiary may pursue nonjudicial foreclosure. See Knapp v. Doherty, 123 Cal.App.4th 76, 86 (2004).

According to Plaintiffs, the NOD was recorded on May 17, 2011, on behalf of HSBC. Plaintiffs argue that HSBC had no power to record a NOD because HSBC was not assigned the Deed of Trust until three months later on August 24, 2011. Mot. at 11. This contention is unsupported by the record. The NOD, a copy of which is attached to the Complaint, was recorded by Northwest as the agent for the beneficiary under the Deed of Trust. Compl. Ex. B at 2. The Deed of Trust identifies MERS as the beneficiary thereunder. Id. Ex. A at 1. Thus, despite Plaintiffs' assertions to the contrary, it does not appear that the NOD was recorded by Northwest on behalf of HSBC. Rather, HSBC is merely referenced in the NOD as the entity which Plaintiffs should contact to determine the amount in arrears or arrange payment to stop the foreclosure. Id. at 1. The Court is therefore not persuaded at this juncture that Plaintiffs are likely to succeed on their claims.

### B. IRREPARABLE HARM

Plaintiffs contend that they will suffer irreparable harm in the absence of a TRO because they will lose their business if the Property is foreclosed upon. Mot. at 15. As an initial matter, Plaintiffs must show that they face both "immediate and irreparable injury[.]" Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). Since the trustee's sale has been cancelled, it is questionable whether Plaintiffs face an immediate threat of foreclosure. That aside, Plaintiffs' delay in seeking relief undermines their claim of irreparable harm. Despite knowing since October 2011 that the Property was scheduled for a trustee's sale, Plaintiffs waited for over a year before undertaking legal action to enjoin the anticipated sale. In

addition, Plaintiffs waited almost a month after the Court denied Plaintiffs' First Motion for TRO before attempting to serve Defendants with the Complaint.  While delay in seeking a TRO is not dispositive, it certainly militates against any claim of urgency.  See Miller ex rel. NLRB v. Cal. Pac. Med. Ctr., 991 F.2d 536, 544 (9th Cir. 1993) ("that [the moving party] tarried so long before seeking this injunction is . . . relevant in determining whether relief is truly necessary"); Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); Lydo Enters. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); see also Dahl v. Swift Distribution, Inc., No. CV 10-00551 SJO (RZx), 2010 WL 1458957, at *4 (C.D.Cal. Apr. 1, 2010) (finding that an eighteen-day delay in filing TRO application "implies a lack of urgency and irreparable harm.").

### C.  BALANCE OF EQUITIES

Next, Plaintiffs allege that they and their clients face will face undue hardship if the Property is foreclosed upon and that there are no equitable considerations that favor Defendants.  Mot. at 15.  Not so.  Plaintiffs' claims that Defendants improperly commenced the foreclosure process must be balanced against the fact that Plaintiffs have defaulted on their mortgage in the amount of $43,634.20.  Compl. Ex. B.  Plaintiffs have made no showing that they have made any attempt to pay down that amount or otherwise bring themselves current on their debt.  This weighs against Plaintiffs in terms of whether a TRO should issue.  See Quach v. Bank of Am., Nat. Ass'n, No. C 12-5037 EJD, 2012 WL 4498873, at *4 (N.D. Cal., Sept. 28, 2012) ("the court must be mindful that foreclosure proceedings have commenced against Plaintiff due to her failure to pay according to the terms of the Deed of Trust she executed.  For this reason, Plaintiff's complaint of irregularity must be viewed with an eye of inequity.").

The Court also has serious concerns regarding Plaintiffs' failure to comply with the Court's earlier order regarding the prerequisites for renewing their request for a TRO.  On

October 10, 2012, the Court denied Plaintiffs' First Motion for TRO based on Plaintiffs' delay in seeking relief and failure to serve the Defendants with either the Complaint or the Motion for TRO. Dkt. 12. Notably, the Court instructed that Plaintiffs could renew their motion only "after they have provided proper notice to Defendants of the Verified Complaint and their motion for a TRO." Id. at 4. In addition, the Court specified that "before renewing their motion, Plaintiffs must first meet and confer with Defendants in an effort to reach a mutually agreeable postponement of the trustee's sale to facilitate Defendants' ability to submit a brief in response to Plaintiffs' motion." Id.

Instead of undertaking efforts to serve Defendants with the Complaint expeditiously, Plaintiffs waited until November 6, 2012, almost a month after the Court issued its order, before attempting to effect service. See Quimby Decl. Re Serv. ¶¶ 2-5. Notably, Plaintiffs attempted service *on the same date* that they filed their Renewed Motion for TRO. Not only has Plaintiffs' delay in service eliminated Defendants' ability to respond to the instant motion, it also has undermined the Court's efforts to have this case evaluated by the ADR Unit for a possible early mediation or settlement conference. Indeed, had Plaintiffs served the Complaint earlier as envisioned by the Court, the parties would have already have been able to participate in the ADR Unit's program for foreclosure and mortgage fraud cases, which thereby may have obviated the need for the instant motion.

Equally problematic is Plaintiffs' assertion that they met and conferred with Defendants prior to renewing their motion. The record shows that Plaintiffs' counsel, Christopher Epsha, did not himself make a good faith effort to communicate with Defendants or their counsel. See Quimby Decl. Re Compliance ¶¶ 2-11. Rather, those efforts were spearheaded by non-attorney Janice Quimby, who works for Mr. Epsha. Since Mr. Epsha is counsel of record for Plaintiffs, the Court's expectation was that he, or another licensed attorney working at his direction, would personally meet and confer with Defendants. Not only is Mr. Epsha's apparent delegation of such Court-ordered responsibility is outrageous, it is both the spirit and intent of the Court's meet and confer order.

####    D.    PUBLIC INTEREST

Lastly, Plaintiffs contend that the public interest favors the issuance of a TRO in order to compel Defendants to "strictly adhere to the provisions of California's non-judicial foreclosure statute[.]" Mot. at 15. As discussed, however, there is no indication, based on the limited record presented, that Defendants failed to comply with their statutory obligations. As such, the Court is not persuaded that the public interest favors the issuance of the requested TRO.

### IV.    CONCLUSION

In sum, the Court finds that Plaintiffs have failed to make a clear showing that they are entitled to a TRO under the four factors set forth in Winter. Accordingly,

IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Renewed Motion for a TRO is DENIED.

2. This Order terminates Docket No. 14.

IT IS SO ORDERED.

Dated: November 13, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge